## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| UNITED SPINAL ASSOCIATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | )     Case No. 20-cv-2236 (TSC) |
| ANDREW M. SAUL, Commissioner of | ) |
| the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

### JOINT STATUS REPORT

Pursuant to the Court's order dated April 29, 2021, Plaintiff United Spinal Association, Inc. ("United Spinal") and Defendant Andrew M. Saul, Commissioner of the Social Security Administration ("SSA"), by undersigned counsel, report to the Court as follows.[1]

As the parties differ in their views as to whether the stay should be lifted, they set forth their respective positions below.

### Plaintiff's Position

#### Background

1.      On December 21, 2020, Plaintiff filed a consent motion to stay the remaining briefing deadlines in this case. *See* Pl.'s Consent Mot. to Stay Deadlines (Dec. 21, 2020), ECF No. 20.  Plaintiff, with Defendant's consent, requested that there be a temporary stay because at the time Plaintiff "under[stood] that SSA may take action in January 2021 relating to the

---

[1] This Joint Status Report is being filed on July 1, 2021, following Defendant's June 30, 2021, Consent Motion for Extension of Time to File Joint Status Report.  *See* Def.'s Consent for Mot. Extension of Time to File Joint Status R. (June 30, 2021), ECF No. 23.  The Court granted this motion on July 1, 2021.  *See* Minute Order Granting Consent Motion for Extension of Deadlines (July 1, 2021).

acceptance of electronic signatures that could affect the course of this litigation." *Id.* Plaintiff believed "an extension of time is warranted to ascertain what, if any, effect this development would have on this case." *Id*. at 2. This belief was not based on any information from the parties to the *NFB* action.

2.      By Minute Order dated December 22, 2020, this Court granted in part and denied in part this motion, directing the parties to meet and confer and file a status report on February 23, 2021.

3.      Meanwhile, on February 18, 2021, the parties in *National Federation of the Blind* filed a joint motion to stay proceedings in their case. Joint Mot. For Stay, *National Federation of the Blind v. Saul*, Case No. 20-cv-1160 (TSC) (Feb. 18, 2021), ECF No. 42. In that filing, the parties "agreed that a further temporary stay of litigation is advisable" and that should the stay be granted, SSA "will put a temporary protocol in place and conduct a further study and analysis of certain issues relevant to the litigation, which could allow the parties to reach a mediated resolution of their dispute." *Id*. at ¶ 3. The Court granted that request to stay and ordered the parties to that other case file a further joint status report by November 19, 2021. Minute Order, *National Federation of the Blind v. Saul*, Case No. 20-cv-1160 (TSC) (Feb. 18, 2021).

4.      Thereafter, in the parties' joint status report of February 23, 2021, filed in this case, Plaintiff stated that it wished to proceed with the briefing because, by that point, Defendant had only proposed to implement unspecified changes to its electronic signature policy and it was "unclear to Plaintiff what, if any, impact these undefined proposed measures may have on this case." *See* Joint Status Report at 2 (Feb. 23, 2021), ECF No. 21. Accordingly, the parties proposed deadlines for the remaining briefing in the case. *Id*. On February 24, 2021, the Court denied that proposal and ordered the parties to meet and confer with the parties in *National Federation of the*

*Blind*, 20-cv-1160-TSC, "to determine whether the recent developments in National Federation of the Blind provide an opportunity for the parties to consolidate the two cases and/or whether the parties agree to mediate the two cases in tandem . . . ." The Court required a further joint status report to be filed by April 1, 2021.

5.      Subsequent to the February 24, 2021, Minute Order, Defendant's agency made two changes in its protocols related to signatures on forms necessary for disability benefits applications. The first protocol, effective March 10, 2021, provides for the submission of the representative appointment form (Form SSA-1696) through an online portal called the "e-1696."[2]

6.      The second protocol, effective March 11, 2021, is a "temporary" protocol for the acceptance of forms with electronic signatures if the forms are transmitted in a bundle along with an electronically signed representative appointment form. *See* Program Operations Manual System ("POMS"), EM-20022 REV 2 (Mar. 11, 2021), https://secure.ssa.gov/apps10/reference.nsf/links/08282020025127PM.

7.      In light of these new protocols and in accordance with the February 24, 2021, Minute Order, the parties conferred with the parties in *National Federation of the Blind* regarding the developments in that case and, on March 17, 2021, United Spinal formally rejoined the mediation for the sole purpose of acquiring certain confidential information relating to the agreement in the mediation in *National Federation of the Blind*. In the subsequent joint status report dated April 1, 2021, the parties stated their agreement that the two cases should not be consolidated. Joint Status Report ¶ 2 (Apr. 1, 2021), ECF No. 22. As to the issue of briefing, Plaintiff requested that deadlines be further stayed through June 15, 2021, to permit further time for Plaintiff here to assess the adequacy of the temporary protocol negotiated by the parties in

---

[2] Instructions for completing the e-1696 are available at https://secure.ssa.gov/ssa1696/front-end.

*National Federation of the Blind*, *id*. at ¶ 4, whereas SSA requested that the Court stay the proceedings through November 19, 2021, to match the schedule in *National Federation of the Blind*. *Id*. at ¶ 5.

8.    By minute order dated April 29, 2021, the Court stayed the case pending further order of the Court and requested that the instant joint status report be filed by June 30, 2021, directing that "[t]o the extent a party proposes to lift the stay, the party shall set forth in detail the basis for such a proposal."

9.    On June 30, 2021, Defendant filed a consent motion requesting a one-day extension of this deadline to July 1, 2021 because it "require[d] additional time to review a recently provided draft from Plaintiff and make any further proposed edits as it may deem necessary, and then the parties will require time to finalize the report."  Consent Mot. for Extension of Time to File J. Status Rep.¶ 1 (June 30, 2021), ECF No. 23.

Plaintiff's Report

10.    Plaintiff hereby requests that the Court lift the stay and adopt a briefing schedule. Since Plaintiff filed this case in August 2020, Plaintiff has sought to balance its desire to move forward with its claims challenging Defendant's neglect of his statutory duty to accept electronic signatures from the public with Plaintiff's interest in exploring any possibility that SSA might try to resolve the matter without the need for further litigation.  Plaintiff hoped that Defendant might be amenable to rectifying the matter when Plaintiff agreed to stay briefing deadlines late last year and to engage in mediation along with the parties in *National Federation of the Blind.*  As previously described to the Court, Plaintiff unfortunately ultimately concluded "that the prospects of resolving this action through mediation do not warrant delay in briefing on the merits of this action.  Despite having concluded that resolution through mediation is very unlikely, Plaintiff is

4

willing to continue to participate in mediation with the parties in *National Federation of the Blind* on a parallel track while briefing in this action proceeds." Joint Status Report at 1 (Oct. 30, 2020), ECF No. 16.

11.     More recently, Plaintiff again thought that perhaps a hold on the litigation could result in resolution of the case when SSA seemed poised to take further action early this year. But Defendant's delayed actions and half-measures have now demonstrated to Plaintiff that SSA does not plan to accept electronic signatures as required by statute. Plaintiff should not be faulted now for trying to resolve this matter earlier. To the contrary, Plaintiff's previous willingness to wait should be all the more reason for the Court to grant Plaintiff's request now. The fact that the parties in *National Federation of the Blind* were able to reach an agreement to stay briefing temporarily, without Plaintiff's involvement, does nothing to undermine Plaintiff's dissatisfaction with SSA's continued refusal to accept electronic signatures, nor should it preclude Plaintiff from pursuing its claims. SSA's two new protocols are inadequate to resolve this litigation because the agency still requires verification of electronic signatures on representative appointment forms, the protocols do not even purport to apply to all forms required for disability benefit applications, including most significantly applications and other forms submitted by certified representatives, and the agency therefore continues to reject electronic signatures unlawfully. Any study of the temporary protocol, about which Defendant offers no detail here (and claims is subject to mediation confidentiality despite having presented it to the Court as the basis of the requested and granted stay in *National Federation of the Blind*), cannot reasonably be expected to change that.

12.     The first protocol, effective March 10, 2021, purports to allow a representative and claimant to submit a notice of appointment form (SSA-1696) through an electronic portal, the e-1696, supposedly without the need for any further verification of the signature. Plaintiff

understands, however, that this change has not been implemented properly and many of SSA's filed offices continue to require additional telephonic verification of electronic signatures.

13.     The second protocol, which is only temporary, relates to the agency's acceptance of other forms without wet-ink signatures as long as those other forms are accompanied by an electronically signed SSA-1696, the appointment of representative form.  *See* Program Operations Manual System ("POMS"), EM-20022 REV 2.  By its own terms, this bundling protocol, and the agency's implementation of it, continues to violate the statutory prohibition on rejecting electronic signatures.  Specifically, the temporary protocol still requires that claimants verify the submission of the SSA-1696 and other bundled forms.  According to the written protocol, if the agency does not reach claimants by phone, the agency writes to the claimants with the contact information of agency representatives requesting that the claimants call to verify their applications.  If the claimant does not respond to the phone calls or the written communication within two weeks, SSA rejects the electronic signature on all forms and returns the notice of appointment and other relevant representational documents to the party who submitted them.

14.     Moreover, this temporary protocol does not even purport to call for the acceptance of electronic signatures on applications filed by representatives through Defendant's on-line application filing system known as iClaims.  *See* POMS, GN 00204.059 (discussing the Internet Claim (iClaim) Medicare-Only Application).  Importantly, certified representatives are required to file applications using "iClaims."  *See* 20 C.F.R. § 404.1713.  Under SSA's existing rules not modified or addressed by the temporary protocol, the first step in filing an application through iClaims is to indicate whether you are completing this application on behalf of yourself or if you are a representative "helping someone who is not with me; and therefore, cannot sign the application at this time."   SSA Appointed Representative Best Practices and Tips at 2,

https://www.ssa.gov/representation/documents/Best%20Practices%20and%20Tips.pdf.     After completing the application on behalf of the claimant, SSA subjects the applications filed by representatives through iClaims to further verification by the claimants.  *See* Pl.'s Mot. for Summ. J. at 8–10 (Nov. 4, 2020), ECF No. 17.  Specifically, SSA makes three attempts to contact the claimant by telephone to verify the submission of the application.  *Id*.  If those phone calls are unsuccessful, SSA then prints out a hardcopy summary of the iClaims application submission, known as Form SSA-L2, and mails this document to the claimant for signature.  *Id.*  While the representative receives an electronic summary from iClaims as well, that version does not provide instructions or a location for a signature by the claimant.  So while Defendant's temporary protocol includes the iClaims summary document (Form SSA-L2) as a document that can be included in the bundling process, in reality there is no practical way for a claimant to put an electronic signature on the hardcopy document that is mailed to them, and then get that signed document to their representative for submission in the bundle with the representative appointment form 1696 and other documents.  Furthermore, there is no mechanism for submitting a bundle of forms through the iClaims method itself.  Accordingly, in practice, Defendant continues to reject electronic signatures for all applications submitted by certified representatives.

15.     Furthermore, the rejection of electronic signatures has been exacerbated by the pandemic.  Defendant's field offices are still in a state of disarray and not operating fully as a result of the COVID-19 emergency.  Although the temporary bundle protocol requires that Defendant's agency call claimants three times to confirm the representative appointments and applications, Plaintiff understands that the vast majority of the time these calls never happen, and instead, the agency routinely seeks wet-ink verifications on hardcopy documents mailed to claimants.  Further, often these bundles are misplaced and claimants or their representatives are asked to re-submit the

materials submitted in the bundles.  SSA and its counsel's position below demonstrate misunderstanding of the ground-level operations at their field offices.  Defendant makes no attempt to address any of the specific operational issues with the protocols identified here by Plaintiff caused by SSA's unlawful failure to accept electronic signatures.  Contrary to Defendant's claim that these issues are "outside the scope of this report," Plaintiff presents this detailed information to the Court to support its position that briefing in this case needs to continue in order to reach a resolution.  Ironically, many, if not all, of these issues would be resolved or minimized by more generally accepting electronic signatures on all applicable documents relating to disability benefit applications as sought in this case by Plaintiff.

16.    In light of the specific problems with the new protocols, which are heightened by continued remote working by Defendant's employees that has no end in sight, Plaintiff sees no genuine reason to continue to stay the case.  Even if the protocols were applied properly and the bundling protocol was made permanent, the new procedures would not eliminate the unlawful rejection of electronic signatures as discussed above.  While Defendant claimed the need to stay the case until November 19, 2021, to allow for the agency to undertake a study of issues related to the litigation, Plaintiff knows nothing more of the purpose and status of the study than it did when Defendant informed the Court in February in the context of requesting a stay in *National Federation of the Blind*.  *See* Joint Mot. For Stay, *National Federation of the Blind v. Saul*, Case No. 20-cv-1160 (TSC) (Feb. 18, 2021), ECF No. 42.  While Defendant attempts to claim any updates on the study are subject to confidentiality, neither the mediation nor any discussion related to resolving either of these cases is ongoing to Plaintiff's knowledge.  When Plaintiff reentered the mediation for the purpose only of obtaining the information that the parties to the *NFB* case apparently sought to share, Plaintiff certainly did not understand that the implication would be an

inability to share with the Court the requested, detailed reasons why it finds Defendant's publicly

announced protocols and study insufficient to remedy the agency's failure to comply with federal

law on the acceptance of electronic signatures.  At the very least, Defendant could provide some

update on a decision apparently already made by a federal agency (not protected by the deliberative

process privilege) to undertake a study with federal dollars, such as what precisely is being studied,

if the study has started, if the agency intends to complete it prior to the expiration of the stay in

*National Federation for the Blind*, or who is conducting the study (whether the agency itself or an

outside contractor).  In this context, a study of an already unsatisfactory protocol would not appear

likely to resolve Defendant's ongoing violation of the statutory obligation not to reject electronic

signatures, including in connection with applications from appointed representatives.

17.    Plaintiff has concluded that nothing short of an order from the Court will result in

Defendant meeting this obligation.  Thus, Plaintiff requests that the Court lift the stay and

implement the following briefing schedule:

| | |
|---|---|
| July 30, 2021 | Plaintiff files its opposition to Defendant's cross-motion and reply in support of its motion for summary judgment. |
| August 31, 2021 | Defendant files his reply memorandum in support of his cross-motion. |

18.    At a minimum, Plaintiff requests that the Court order the parties to file a further

joint status report in three months' time and order Defendant to provide an update on the status of

his study and its potential impact on the acceptance of electronic signatures, as well as address the

practical problems raised by Plaintiff here.  Plaintiff would also report any updates, if any, on its

experiences with the protocols.  Notwithstanding Defendant's assertions, the significant practical

problems caused by Defendant's continued noncompliance with federal law are relevant to

whether this action should proceed or not.

**Defendant's Position**

19.     Defendant provides the following additional information regarding the procedural background of this case.  Shortly after filing this lawsuit, United Spinal filed a motion for summary judgment approximately one month before SSA's answer or other response to the Complaint was due (ECF No. 8), a motion the Court denied without prejudice as "premature" by minute order dated October 9, 2020.  United Spinal then briefly participated in the mediation occurring in *National Federation of the Blind*, but in October 2020, advised the Court that it wished to proceed with the filing of a dispositive motion.[3]  (ECF No. 16 at 1-2)  After the parties' filed cross-motions (United Spinal on November 4, 2020 and SSA on December 7, 2020), the remaining briefing deadlines that had been set by the Court (January 8, 2021 and February 8, 2021) were suspended at United Spinal's request in its motion to stay of December 21, 2020 (ECF No. 20).

20.     In the parties' joint status report of February 23, 2021, United Spinal stated that it again wished to proceed with the briefing and, accordingly, the parties proposed deadlines for the remaining briefing in the case, but the Court denied that proposal and ordered the parties to meet and confer with the parties in *National Federation of the Blind*, noting in its minute order the potential of "conserving the resources of the court, as well as the parties in the instant case."  United Spinal formally rejoined the mediation on March 17, 2021, for the purpose of the sharing of certain confidential communications with United Spinal.  That mediation remains open.  This case currently remains stayed and, pursuant to the Court's order of April 29, 2021, "[t]o the extent a party proposes to lift the stay, the party shall set forth in detail the basis for such a proposal."

---

[3]     Although United Spinal indicated its willingness to remain in the mediation while simultaneously briefing dispositive motions, SSA did not agree it would be productive or feasible to mediate with United Spinal while at the same time briefing dispositive motions with United Spinal. (ECF No. 16 at 1-2)

21.     Defendant requests that the Court continue to stay proceedings in this case concurrent with the stay in *National Federation of the Blind* and, consistent with the schedule in that case, issue an order directing the parties to file a joint status report by November 19, 2021, with their respective positions as to further proceedings.  In the Joint Motion to Stay filed in *National Federation of the Blind* on February 18, 2021, SSA stated that, should the stay be granted in that case, it would put a temporary protocol in place (which has since occurred) and would conduct a study and analysis of certain issues relevant to the litigation and requested a stay of nine months to allow for that study and analysis, which it stated could allow the parties to reach a mediated resolution of their dispute. (Case No. 20-1160, ECF No. 42)  Other than stating generally that a study and analysis was to be conducted, and requesting that the Court stay proceedings for nine months to allow for this study and analysis, no information about the study and analysis was included in the Joint Motion to Stay.

22.     To require the immediate resumption of briefing at this time would unnecessarily expend the resources of the Court and the parties to complete briefing rather than to allow for the potential developments contemplated by the schedule in *National Federation of the Blind*. In addition, United Spinal has adopted an approach in this litigation of "starts and stops" and should not now be heard to insist on rushing back into completing the briefing that had been suspended midstream at its request.  United Spinal first filed for summary judgment in September 2020; after that was denied as premature, and after a brief stint in mediation, it refiled on November 4, 2020; in December 2020, it asked to stay the remaining briefing deadlines; and in February 2021, it advised the Court that it wished to continue briefing.  Now it wants briefing completed within two months, by August 31, 2021.  In light of this history, and of the additional options (both permanent

and temporary)[4] instituted since United Spinal's December 21, 2020 stay motion, United Spinal will not be prejudiced by continuing the stay of this litigation, and with the Court directing the parties to file a further joint status report by November 19, 2021 in accordance with the schedule in *National Federation of the Blind,* as SSA proposes.

23.     As to the assertions and demands made in paragraphs 16 and 18 above concerning the SSA study and analysis referenced in the Joint Motion to Stay filed in *National Federation of the Blind*, Defendant objects on multiple grounds to the inclusion of such assertions and demands in this status report, and that objection is in no way waived by Defendant's joining in this report (it has been required to do so by this Court's April 29, 2021 order).  First, such assertions and demands (including for information regarding the ongoing study and analysis) are outside the scope of this report, which is solely focused on whether or not the stay should be lifted to allow briefing to resume.  Second, mindful of its obligations to preserve mediation confidentiality, SSA can neither confirm nor deny what information it may, or may not, have chosen to provide to any party to the currently open mediation as part of its negotiation position in that mediation as would be necessary to respond to United Spinal's assertions.  What is plain is that the Court should not be asked by a party to an open mediation (as noted above United Spinal formally rejoined the mediation in March 2021) to dictate to another party to the mediation what should or should not be disclosed on matters within the scope of the mediation.  SSA and the plaintiffs in *National*

---

[4]     SSA states that, to date, SSA has moved two forms (SSA-455 and SSA-1696) identified in this litigation online.  Consistent with the Joint Motion to Stay filed in *National Federation for the Blind*, SSA also has published instructions to accommodate the temporary use of electronic signatures on additional forms. *See* Emergency Message (EM) 20022 REV 2 "Temporary Instructions for the Bundled Receipt and Processing of an Electronically Signed SSA-1696 and Certain      Other      Forms,      (Mar.      11,      2021), https://secure.ssa.gov/apps10/reference.nsf/links/08282020025127PM.

*Federation of the Blind* engaged in lengthy discussions for several months within the context of mediation that culminated in the filing of the February 2021 Joint Motion to Stay in that case. To the extent United Spinal is dissatisfied with that outcome, it has no basis to complain. It was a party to the mediation for a period of time, but, as reflected in a status report filed on October 30, 2020, chose to proceed with briefing on dispositive motions (ECF No. 16 at 1), only to rejoin the mediation in March 2021 after asking the Court to stay the briefing schedule that was necessitated by its desire to litigate. Now again a party to that mediation, and having received certain confidential information in that context after rejoining the mediation in March 2021, United Spinal is effectively asking this Court to intervene in an open mediation (as well as seeking disclosure of the agency's privileged deliberative process concerning an ongoing study and analysis). Such gamesmanship, which has the potential to be disruptive of a mediation that remains open, should be rejected outright.

24.    As to the other matters raised by United Spinal above, including any arguments that may go to the merits of its claims in this litigation, its mischaracterization of the recent actions taken by SSA (as accurately described by SSA at *supra* n.4), its misunderstanding of SSA processes and rules, and other unsupported assertions and mischaracterizations above, SSA does not concede any such matters. SSA will respond to them at an appropriate time and reserves all rights in that regard. United Spinal's request for a future status report on alleged "practical problems" also exceeds the purpose of this report, and concerns matters that are not currently before this Court in a case that still is at the pleadings stage.

25.    In the event the Court does reinstate a briefing schedule, however, SSA would request 60 days from United Spinal's filing of its combined opposition and reply to file its reply in light of resources being spent on developments related to *National Federation of the Blind*,

13

scheduled leave of undersigned counsel in August 2021, commitments in other matters, and

religious holidays during the middle of September 2021.

26.    The parties' respective proposed orders are attached.

Respectfully submitted,

/s/ Stephanie A. Webster                                CHANNING D. PHLLIPS,
Stephanie A. Webster                                    D.C. BAR #415793
D.C. Bar No. 479524                                     Acting United States Attorney
Douglas H. Hallard-Driemeier
D.C. Bar No. 994052                                     BRIAN P. HUDAK
Alex J. Talley                                          Acting Chief, Civil Division
D.C. Bar No. 1020488
ROPES & GRAY LLP                                        By: /s/ Jeremy S. Simon
2099 Pennsylvania Avenue, NW                            JEREMY S. SIMON
Washington, D.C. 20006-6807                             D.C. BAR #447956
t: (202) 508-4859                                       Assistant United States Attorney
f: (202) 383-9334                                       Civil Division
stephanie.webster@ropesgray.com                         555 4th Street, N.W.
                                                        Washington, D.C. 20530
                                                        Jeremy.Simon@usdoj.gov
Attorneys for Plaintiff

                                                        Counsel for Defendant


                                                        July 1, 2021